[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14700

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 20, 2011
JOHN LEY
CLERK

D. C. Docket No. 2:09-cv-00384-WKW-TFM

VICKIE D. BROOKS,

Plaintiff-Appellant,

versus

HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(October 20, 2011)

Before TJOFLAT, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

For the reasons fully discussed at oral argument, the judgment of the district court is affirmed.  In this case, the plaintiff asserts two claims: first, a disparate treatment claim; and second, a hostile work environment claim.   Plaintiff's evidence was as follows.  She testified that on more than one occasion,[1] her team leader, Gunn, spoke to her with exasperation and said "you black folks" or "nigger."  She also pointed to two alleged comparators, but wholly failed to adduce evidence showing that they were similarly situated.

We can reject plaintiff's hostile work environment claim summarily.  The alleged racial slurs were very few in number, and plaintiff testified that they did not adversely affect her job performance.

Turning to her disparate treatment claim, plaintiff was fired for leaving her shift without the permission of a member of management.   The relevant policy provided:

> Any situation where a Team Member leaves the facility during scheduled work time (including overtime whether scheduled or voluntary) without their group leader, manager, senior manager, or any other member of management's authorization, the Team Member will be considered to have voluntarily resigned from his/her employment.

According to plaintiff's version of the facts, she left her shift early with the permission of Gunn, her team leader.  It is clear that Gunn was not a member of the

---

[1] However, she could not say that it happened as many as five times.

2

management; he was not a Group Leader, but rather was merely a team leader. During the investigation of the incident by management, plaintiff admitted that she left her shift without the permission of a member of management.

During the investigation, Gunn gave an account of the incident that differed from plaintiff's. He said that plaintiff told him she wanted to leave early because of a medical problem, but that he had told plaintiff to go to medical to be excused, and that if she left without going to medical she would be counted as unexcused. At the end of the shift, Gunn reported to manager Akers that plaintiff had left the shift without authorization. The fact that plaintiff left early was confirmed by plaintiff's clock-out time.

Plaintiff's disparate treatment claim may well be without merit for several reasons. However, only one warrants discussion. As a preliminary matter, it is clear that the ultimate decision to fire plaintiff was not made by Gunn, but was made after a thorough investigation by Swegman and Kimble (whose roles were in the nature of human resources personnel). Plaintiff does not assert that they had any racial animus. Indeed, aside from the allegations against Gunn, there is no evidence of racial bias on the part of any other relevant actor. However, in supplemental authority, and at oral argument, plaintiff relies upon the recent Supreme Court decision in Staub v. Proctor Hosp., ___ U.S. ___, 131 S.Ct. 1186

(Mar. 1, 2011), to support plaintiff's assertion that Gunn's allegedly biased actions influenced the firing decision, and therefore was a causal factor. We reject plaintiff's reliance upon Staub, and conclude that any possible bias on the part of Gunn did not operate as a causal factor in the decision to fire plaintiff.

We need not in this case explore the precise meaning or reach of Staub. Of the several possible reasons that the decision provides no comfort to plaintiff, one is very clear. Any possible taint in Gunn's intent clearly was not a causal factor in the decision to fire plaintiff. We know that for the following reasons. Swegman initially misunderstood Gunn's employment status; Swegman thought Gunn was a Group Leader, a member of management. Thus, thinking that permission from Gunn would have been sufficient, and taking Gunn's statement into account, Swegman's initial decision was that plaintiff should not be fired. Swegman reasoned that, when Gunn told plaintiff that her leaving would be "unexcused," plaintiff might reasonably have interpreted that as permission to leave. Kimble concurred, and the initial decision of the decision-makers was not to fire plaintiff. Thereafter, and as a result of the questioning by Akers – not Gunn – Swegman realized that Gunn was a mere team leader, not a Group Leader, and not a member of management authorized to grant such permission. Only then did Swegman and Kimble reevaluate. And at that time, the decision of Swegman and Kimble to fire

4

plaintiff was based on the fact that plaintiff had admitted that she had never received permission to leave from a member of management. The policy clearly provided that leaving the shift without permission from a "group leader, manager, senior manager, or any other member of management" would be considered an abandonment of the job. For this reason – and not because of anything that Gunn said – plaintiff was fired. Under these circumstances, the mere fact that, absent Gunn's actions, management may not have noticed plaintiff's violation[2] is not a sufficient causal connection. Rather, these circumstances fall within the following language of Staub:

> But the supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified.

131 S.Ct. at 1193 (emphasis added). In other words, the firing decision did not rely at all on anything Gunn said, and the decision-makers determined, wholly apart from anything Gunn said, that plaintiff's firing was entirely justified.

Thus, Staub can provide no comfort for plaintiff in this case. Plaintiff's other arguments on appeal are wholly without merit. For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[2] However, the violation was apparent from the fact that plaintiff clocked out fifteen to twenty minutes before her shift was released and the members of that shift clocked out.

5